**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**PAN AMERICAN INSURANCE COMPANY, Appellee.**

No. 373.

Court of Civil Appeals of Texas. Tyler.

July 18, 1968.

Rehearing Denied Sept. 19, 1968.

Albert Smith, Lubbock, for appellant.

Key, Carr, Carr & Clark, Donald M. Hunt, Lubbock, for appellee.

SELLERS, Justice.

Mr. and Mrs. Liggett, the owners of an Oldsmobile automobile which had been converted into a pickup truck and which was covered by an insurance policy issued by State Farm Mutual Automobile Insurance Company, the appellant herein, on September 30, 1963, drove said truck into the place of business of Western Service & Supply, who was covered by a policy of insurance issued by Pan American Insurance Company, appellee herein.

The purpose of the Liggetts in going to Western Service & Supply was to fill their tank on their pickup truck with butane gas. Mr. Barber, a stockholder and employee of Western, was called to fill the tank with butane but he asked for a minute or two before coming out to service the Liggett truck. When he did come out, Mr. Liggett, who had been there before and was familiar with the method of putting butane into his truck, had already begun the operation of putting the gas into the tank of the truck. Then Mr. Barber came out and assisted him in finishing the job. Mrs. Liggett had cautioned her husband to put out his cigarette before he started to put the gas into the tank. She remained in the cab of the pickup. Just as the operation was completed (placing the gas into the pickup tank), Mrs. Liggett started to light her own cigarette, and an explosion occurred in the cab of the truck which severely burned her, and in her husband's efforts to protect his wife, he received serious burns himself. The truck was a total loss.

Appellee's policy issued to Western Service & Supply insured Western and thereby agreed to defend any suit and pay up to its policy limits.

The insurance of appellant on the Liggett truck was a liability coverage.

The Liggetts sued Western Service & Supply, which was in the wholesale and

retail butane gas business, alleging a number of acts of negligence against Western. Appellee called upon appellant to defend the suit, and appellant refused. Appellee defended the suit for its insured and reached a settlement with the Liggetts for the sum of $6,000.00.

This appeal is from a summary judgment for appellee against appellant to recover the $6,000.00 paid the Liggetts in the settlement and in addition, attorney's fees and adjusters' expenses in the sum of $3,487.39. From the summary judgment for appellee, appellant has duly prosecuted this appeal.

Appellant, in its first two points of error, makes the contention that its policy with the Liggetts did not cover the fire in question. Appellant's policy provided as follows:

"Persons Insured. The following are insureds under Part I:

"(a) With respect to the owned automobile,

(1) the named insured and any resident in the same household,

(2) any other person using such automobile, providing the actual use thereof is with the permission of the named insured; * * *".

In "Definitions" under Part I, it is also stated:

" 'use' of an automobile includes the loading and unloading thereof; * * *".

The question presented under this policy is whether it covers Western and its employee, Barber. The facts are undisputed that Mr. Liggett went to Western's place of business to secure butane gas and that he secured this gas with the assistance of Barber, an employee of Western. About the time the filling of the tank with butane was completed, the explosion occurred. Under this state of facts, it would appear to this Court that Western and its employee were users of the Liggett pickup truck under the terms of appellant's policy. Red Ball Motor Freight, Inc. v. Employers Mut. Liability Ins. Co., 5 Cir., 189 F.2d 374, 377, from which we quote:

"Neither are we unmindful of the fact that the act causing the accident, for which coverage is claimed here, occurred not while cargo was being loaded into, or unloading from the tractor-trailer, but while the tractor was being fueled * *. We are of the opinion * * * that fueling the truck for the journey was just as much a 'use' of it is making the journey would be."

Appellant makes the further contention that the facts of this case bring it within the exclusionary provision of the policy which provides:

"4. The exclusions which read:

'to an owned automobile while used in the automobile business, but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which the named insured or such resident is a partner, or any partner, agent or employee of the named insured, such resident or partnership;' and

'to a non-owned automobile while used (1) in the automobile business by the insured or (2) in any other business or occupation of the insured except a private passenger automobile operated or occupied by the named insured or by his private chauffer or domestic servant, or a trailer used therewith or with an owned automobile;'

"are deleted and the following substituted therefor:

'to an owned automobile while used by any person while such person is employed or otherwise engaged in the automobile business, but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which the named insured or such resident is a partner, or any partner, agent

or employee of the named insured, such resident or partnership;' and * * *".

"Automobile business" is defined in the policy as follows:

"'automobile business' means the business or occupation of selling, repairing, servicing, storing, or parking automobiles: * * *".

■ This brings us to the question of whether the Liggett truck was being "used" in the business of Western at the time the fire occurred. In other words, whether a car coming in to a business for the purpose of securing fuel, and that only, and receiving the same in the customary manner is engaged in the business of the supplier of the fuel. We are of the opinion it is not, and especially in this case where the owner's wife never did depart from the truck until after the accident.

A very recent case from the Supreme Court of Nebraska, Truck Insurance Exchange et al. v. State Farm Mutual Automobile Insurance Company, 182 Neb. 330, 154 N.W.2d 524, and authorities therein cited, seems to settle this point, from which we quote:

"Automobile which had been serviced by a filling station operator and which was being driven by operator to a parking place on filling station premises when it collided with another vehicle was not being used in an 'automobile business' within exclusionary provisions of an automobile liability insurance policy that defined automobile business as the business · of selling, repairing, servicing, storing or parking of automobiles."

Appellant has an alternative point to the effect that if appellant is liable, it could only be liable for its pro rata part of the loss which would be $600.00. Both policies have a provision of coverage when other insurance is involved. The State Farm policy reads:

*"Other Insurance.* If the insured has other insurance against a loss covered by

Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over other valid and collectible insurance."

Pan American's policy reads:

"14. Other Insurance: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

■ It would seem under the above clauses that appellant would be primarily liable under its own automobile policy and appellee with its excess coverage would only be liable for any excess, if any, of the loss, of which there was none.

In Canal Ins. Co. v. Gensco, Inc., 404 S.W.2d 908, 910 (Tex.Civ.App., San Antonio, 1966, no writ), it is held:

"The trial court properly held that appellant's policy provided valid and collectible insurance on the insured vehicle at the time of the accident. Under the express terms of appellant's policy, it afforded pro rata insurance with all other valid and collectible insurance. On the other hand, the express terms of the Employers' policy concerning rented or

non-owned vehicles provided excess insurance only over all other valid and collectible insurance. In this situation, the courts uniformly give full effect to the excess clause and require the primary policy to be exhausted before the excess coverage policy becomes effective. Great American Ind. Co. v. McMenamin, Tex. Civ.App., 134 S.W.2d 734 (wr. dism. correct judg.); Citizens Mutual Auto. Ins. Co. v. Liberty Mutual Ins. Co., 273 F.2d 189 (6th Cir. 1959); American Surety Co. [of N. Y.] v. Canal Insurance Co., 258 F.2d 934 (4th Cir. 1958); United Services Auto. Ass'n v. Russom, 241 F.2d 296 (5th Cir. 1957); Zurich General Accident & Liability Ins. Co. v. Clamor, 124 F.2d 717 (7th Cir. 1941); Appleman, Insurance Law and Practice, § 4914."

Appellant assigns error to the granting of the motion for summary judgment for the reason that there was an issue of fact in the case, and the court erred in granting the summary judgment.

█ It appears that one of the witnesses testified that the automobile that burned was a Pontiac. This is from a deposition that was taken some two years after the fire. This same witness had testified that the truck that burned was at one time a passenger car but at the time of the fire, it had been converted into a pickup truck. Against this evidence is the evidence of the owner of the pickup that it was an Oldsmobile, 1951 model, the same car covered by appellant's policy and in addition to this evidence the record contains a picture of the car that burned which corroborates the evidence given by the owner. It is our opinion that the statement of the witness who called the car a Pontiac does no more than raise a scintilla of evidence as to the make of the car. The assignment is overruled.

Appellant has other assignments of error which have been considered by this Court and are found to be without merit and are overruled.

Judgment of the trial court is affirmed.