Joanna GARMANY, by and through her next friends, et al., Plaintiffs-Appellants,

v.

MISSION INSURANCE COMPANY, Defendant-Appellee.

No. 85–8199.

United States Court of Appeals, Eleventh Circuit.

April 1, 1986.

Michael J. Goldman, Atlanta, Ga., for plaintiffs-appellants.

Howard M. Lessinger, Atlanta, Ga., for defendant-appellee.

ON PETITION FOR REHEARING

Before RONEY and ANDERSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

The sole issue for determination in this appeal is the starting point of automobile insurance coverage under the umbrella insurance policy at issue in this case. The district court determined that the excess coverage available under that insurance policy in these circumstances commenced at the fixed threshold of $500,000. In our original opinion reported at 776 F.2d 981 (11th Cir.1985), we affirmed in all respects. On petition for rehearing, we again affirm the district court's finding as to the fixed threshold, but remand for reapplication of that finding to the facts of this case.

## THE FACTS AND PROCEEDINGS BELOW

This case arises out of the tragic circumstances of an automobile accident occurring near Thomson, Georgia in 1980. On July 19, 1980, James Hamilton sought and received permission to test drive a used automobile that was owned and offered for sale by Hutchinson Motor Co. (Hutchco). Sometime during the test drive while Hamilton was driving, the vehicle struck another vehicle carrying several of the appellants in this case. One child was killed and three other occupants of the automobile were injured.

The numerous injured parties brought suit in Superior Court of the State of Georgia against Hutchco and James Hamilton. The suits alleged negligence on the part of Hamilton and negligent entrustment as to Hutchco, contending that Hamilton was intoxicated at the time of the accident, a fact known to Hutchco's salesman who nonetheless allowed Hamilton to drive the automobile. At the time of the accident in question, Hutchco carried two relevant insurance policies. Hutchco was insured under a "primary" policy issued by third-party defendant Fireman's Fund Insurance Company, as well as under a so-called "excess" or "umbrella" policy written by defendant Mission Insurance Company. It is undisputed that Hamilton, the driver of the vehicle, had no insurance of his own and

that he was insured under these two policies.

Under the Fireman's Fund primary policy, Hutchco and its employees received "underlying" or primary coverage up to $500,000. Other persons, such as permissive users of Hutchco vehicles like Hamilton, received no coverage whatsoever, unless they had no available insurance of their own, in which case the Fireman's Fund policy provided insurance coverage only to extent required by law at that time ($10,000 per person and $20,000 per accident). The umbrella policy issued by Mission contained an upper liability limit of $1,000,000, and the point at which this policy commenced coverage is the issue presented for resolution in this appeal.

The appellants brought suit in state court, but prior to trial, Fireman's Fund paid the plaintiffs $200,000 in exchange for covenants not to sue the dealership, Hutchco. These settlements, which left Hamilton as the only remaining defendant, were entered into over Mission's objections. The first two of the state court trials resulted in judgments totaling $450,000 against the driver. At that point, Fireman's Fund tendered $20,000 into the registry of the court on behalf of the driver, Hamilton, and withdrew from his further representation. The third trial, at which Hamilton was represented by Mission, resulted in a $92,809.50 judgment against him, bringing the total judgments against Hamilton to $542,809.50.

The plaintiff/appellants then brought suit in state court against Mission to recover on their judgments. Mission timely removed the action based upon diversity of citizenship. After conducting discovery, the parties filed cross motions for summary judgment arguing that the sole matter

for resolution was purely a matter of law as to the point at which the Mission insurance policy would be interpreted as beginning coverage as to Hamilton. The district court found that the umbrella policy contained a threshold point of $500,000 for beginning coverage. Mission then tendered that portion of the judgments exceeding $500,000 to the plaintiffs, and the district court entered partial final judgment pursuant to Fed.R.Civ.P. 54(b), as a counterclaim by Mission against Fireman's Fund and the appellants remained pending.

### THE STANDARD OF REVIEW

An order granting a motion for summary judgment is subject to independent review by this court. *Morrison v. Washington County, Ala.*, 700 F.2d 678, 682 (11th Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Although summary judgment should only be entered in the absence of any genuine issues of material fact, *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir.1983), here the parties have stipulated to the underlying facts. Our task in this case, therefore, is to determine whether the lower court erred in determining that the threshold point—the point at which coverage commenced—under the Mission umbrella policy was $500,000 under the circumstances of this case.

### INTERPRETING THE MISSION POLICY

The Mission "excess" insurance policy in this case states that the insurance company shall be liable for the ultimate net loss in "excess of either ... the limits of the underlying insurances as set out in the attached schedule ... or $10,000 in respect of each occurrence not covered by said underlying insurances."[1] The attached schedule

1. This provision of the umbrella policy provides in full:
 III. LIMIT OF LIABILITY—
 The Company shall only be liable for the ultimate net loss the excess of either
 (a) the limits of the underlying insurances as set out in the attached schedule in respect of each occurrence covered by said underlying insurances

 or
 (b) the amount as set out in item 2(c) of the Declarations ultimate net loss in respect of each occurrence not covered by said underlying insurances,
 (hereinafter called the "underlying limits"). and then only up to a further sum as stated in item 2(a) of the Declaration in all in respect of each occurrence—subject to a limit as stat-

describes the Fireman's Fund policy as an underlying insurance with a limit of liability defined as "Combined Single Limit (Bodily Injury Liability and Property Damage Liability) $500,000 each occurrence."[2] As stated earlier, the insurance coverage extended to Hamilton as a permissive user of Hutchco's vehicle was only to the extent that he had no insurance of his own, and then only up to the minimum required under Georgia law, $10,000 per person and $20,000 per accident. The issue on appeal here, therefore, is whether the insurance coverage provided Hamilton under the Mission policy commences at the $500,000 level as stated in the schedule describing the Fireman's Fund policy, or at $20,000, which is the amount of coverage actually provided to Hamilton under the Fireman's Fund policy.

Appellants urge two main arguments on appeal. First, they contend that when Mission issued its umbrella policy, it was aware of the contents of the underlying Fireman's Fund policy.[3] As such, when Mission included the "permissive user" clause in the umbrella policy, it should have been aware that persons in that category would receive only minimum coverage under the primary policy. Therefore, if Mission sought to limit its exposure in such circumstances by creating a gap in coverage between the $20,000 minimum coverage in the primary policy and the $500,000 threshold point of the umbrella policy, it was obligated to make that limitation of liability unambiguous and clear. Appellants consequently contend that the umbrella policy is ambiguous in this regard and must be construed against Mission, or alternatively, that as a matter of public policy full coverage should be extended here because Mission had knowledge of the gap and insurance policies should be construed to afford coverage to innocent parties. The appellants' second theory is that Hamilton was "not covered" by underlying

ed in item 2(b) of the Declarations in the aggregate for each annual period during the currency of this Policy, separately in respect of Products Liability and in respect of Personal Injury (fatal or non-fatal) by Occupation Disease sustained by any employees of the insured.

In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder this policy subject to all the terms conditions and definitions hereof shall

(1) in the event of reduction pay the excess of the reduced underlying limit

(2) in the event of exhaustion continue in force as underlying insurance.

The inclusion or addition hereunder of more than one insured shall not operate to increase the Company's limits of liability beyond those set forth in the Declarations. [Rec. 210].

**2.** The relevant portion of the schedule reads as follows:

### SCHEDULE OF UNDERLYING INSURANCES

| CARRIER | TYPE OF POLICY | LIMITS OF LIABILITY |
|---|---|---|
| * * * | | |
| FIREMAN'S FUND INS. CO. | Automobile Liability | Combined Single Limit (Bodily Injury Liability and Property Damage Liability) $500,000 each occurrence. |
| * * * | | |

[Rec. 209].

---

**3.** There does not appear to be any real contention as to this point. John M. Brough, the head of Mission's casualty underwriting department, testified by way of deposition that the primary policy issued by Fireman's Fund was "not particularly unusual." Furthermore, the deposition of Thomas Ector, Fireman's Fund representative, stated that the primary policy in question here was an "industry standard" policy well-known throughout the insurance industry.

insurance as set out in the schedule of insurance, therefore entitling him to "first dollar" coverage under the umbrella policy. This argument recognizes that Hamilton received minimum coverage under the primary policy as an uninsured motorist. But appellants urge that inasmuch as he did not receive the full $500,000 limits coverage under the Fireman's Fund policy, as described in the schedule of underlying insurance, Hamilton should be considered as "not covered" under the primary policy as the term is used in the umbrella policy.

We start our inquiry with the premise that the issue at hand is a matter of construction of the Mission umbrella policy, and that numerous general principles of insurance contract construction aid our task. As the appellants point out, ambiguities in an insurance contract must be construed strongly against the carrier, and an insurance policy must be construed to provide coverage unless "the contrary clearly appears." *Travelers Indemnity Co. v. Whalley Constr. Co.*, 160 Ga.App. 438, 441, 287 S.E.2d 226 (1981). "Any reasonable doubt as to uncertain language will be resolved against the insurer." *Nationwide Mutual Fire Ins. Co. v. Collins*, 136 Ga. App. 671, 676, 222 S.E.2d 828 (1975). "The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean." *Id.* at 675, 222 S.E.2d 828. As a matter of public policy, it is generally recognized that insurance policies are to be "liberally construed for the protections not only of the insured..., but also the innocent plaintiff who was injured." *Float-Away Door Co. v. Continental Casualty Co.*, 372 F.2d 701, 705 (5th Cir.1966), *cert. denied*, 389 U.S. 823, 88 S.Ct. 58, 19 L.Ed.2d 76 (1967), *quoting Eggerding v. Bicknell*, 20 N.J. 106, 118 A.2d 820 (1955).

We further note, however, that under Georgia law in attempting to ascertain the intentions of the parties, insurance contracts are governed by the ordinary rules of construction applicable to other contracts. *Golden v. National Life & Accident Ins. Co.*, 189 Ga. 79, 87, 5 S.E.2d 198 (1939). The contract must be examined "as a whole" in attempting to construe any portion thereof. *Collins*, 136 Ga.App. at 675, 222 S.E.2d 828, *quoting Cotton States Mut. Ins. Co. v. Hutto*, 115 Ga.App. 164, 166, 154 S.E.2d 375 (1967). "Where the terms and conditions of a policy are unambiguous, the court must declare the contract as made by the parties.... Where the meaning is plain and obvious, it should be treated as literally provided therein." *Genone v. Citizens Ins. Co. of N.J.*, 207 Ga. 83, 86, 60 S.E.2d 125 (1950) (citations omitted).

 Applying these principles of construction to the instant case, we recognize as did the court below that the umbrella policy issued by Mission could have been clearer in setting forth the threshold point for the onset of excess coverage under these circumstances.[4] But that fact does

---

4. The appellants offer the following as alternatives that Mission could have included in the umbrella policy in this case:
 Limitation of liability—as to any policy occurrence under both the scheduled underlying insurances and this umbrella policy, if the scheduled underlying policy does not provide the full $500,000 in coverage required to be maintained for any insured claiming coverage hereunder, and such coverage for any insured under the underlying scheduled insurance for a policy occurrence under the scheduled underlying insurance is less than the $500,000 required to be carried by this policy, Mission shall still have liability on behalf of such insured, to the extent of the limits of this policy, but only above $500,000.
 or

For any person insured to any extent under the scheduled underlying insurances, Mission shall have no liability to pay any amounts on behalf of such insured until the net loss shall exceed $500,000 on behalf of any insured having any coverage under the scheduled underlying insurances.
We agree that these provisions would have more clearly addressed the situation in question here. But the provisions proffered by the appellants have the distinct advantage of hindsight in being drafted after-the-fact with the instant situation in mind. Under normal circumstances, an umbrella policy must be drafted to encompass a number of potential underlying primary policies. This is the purpose for utilizing an attached schedule to spell out those underlying policies and their different coverages. For that

not mandate the conclusion that the policy was legally ambiguous. The umbrella policy sets a threshold point of liability for loss "in excess of . . . the limits of the underlying insurances as set out in the attached schedule." That schedule sets the limits of the Fireman's Fund primary policy as $500,000. Those provisions contain no alternative possibilities or contingencies, nor do they attempt to account for variances in coverage as to different situations encountered under the same underlying policy.[5] These two clauses, when read in tandem, unambiguously set a fixed point at which Mission's liability under the excess policy arises—$500,000. We simply do not discern any ambiguity under this—the only reasonable construction of the umbrella policy.

Our conclusion in this regard gathers support from the Fourth Circuit's decision in *Fried v. North River Ins. Co.*, 710 F.2d 1022 (4th Cir.1983). That case involved a situation where the excess policy provided coverage in excess of the "insured's retained limit," which was defined as the "total of the applicable limits of the underlying policies listed in Schedule A hereof, and the applicable limits of any other underlying insurance available to the insured." The insured in that case had $30,000 available to him, and there was $300,000 worth of policies listed under Schedule A. There had been judgments totaling $80,000 against the insured. In that situation, the Fourth Circuit determined that the starting point of liability under the excess policy was at a minimum the $330,000, the sum of the underlying policy limits contained in Schedule A and the other available insurance. The court determined that the designated policies in Schedule A should be included in setting the umbrella starting point, notwithstanding that they did not apply to the insured being covered in that case. (As in this case, the user there was a permissive user.) In applying New York law and principles of construction, the court found the policy provisions unambiguous, and that the parties clearly intended for the threshold level of the excess policy to be the combined totals of the Schedule A policies and other insurance. 710 F.2d at 1026.

Although not precisely on point, *Fried* supports our decision here. The general principles of New York law applied in *Fried* parallel the construction maxims applied here, and in both cases the insurance contract varies the threshold point depending upon available coverage stated in an attached schedule. The issue in the two cases is substantially the same—whether the excess policy commences coverage at the level of insurance stated in an attached schedule, even though those designated underlying policies as listed do not apply to the insured in question. Therefore, while the decision in each case must rest upon a construction of the particular policy language before the court, we view *Fried* as supportive of our decision here.

■ As to the appellants' contention that public policy requires construction of the umbrella policy to provide the full coverage sought, we simply find no basis for such an argument. However tempting it may be to protect an injured party and to mitigate the seemingly harsh result reached in a particular case, the umbrella policy, as we found earlier, simply is not ambiguous. In the face of no ambiguity, we must remain true

reason, it is simply impractical to include a clause such as either of those proposed above in the body of the umbrella policy.

5. The appellants state that "the 'attached schedule' of underlying insurances refers not only to the amounts of coverage but to the very industry standard policy itself of which Mission had knowledge." Appellants' Brief, at 19. The thrust of this argument apparently is that the description of the Fireman's Fund policy contained in the attached schedule is merely a short-hand description that does not set out all applicable primary policy limits. We reject this contention as contrary to the plain language of the umbrella policy. That policy provides for coverage in excess of "the limits of the underlying insurances *as set out in the attached schedule.*" (emphasis added). That policy does not provide coverage in excess of "the limits of the underlying insurances as set out in the attached schedule *or* as contained in the underlying insurances but not specifically set out in the attached schedule."

to the literal dictates of the policy language. *Genone*, 207 Ga. at 86, 60 S.E.2d 125. And, in fact, as the *Fried* court observed, consideration of the function of excess policies may call for a result contrary to that urged by the appellants. Such policies are intended to provide low cost coverage for catastrophic losses beyond the bounds of ordinary primary limits, and the insurer must be able to ascertain the point at which its liability will attach in order to gauge the insurable risk and its cost of coverage. "To hold otherwise subjects the insurer to unforeseeable and variable risks depending upon the underlying insurance actually maintained by any one of the potential insureds." 710 F.2d at 1026–27 & n. 6.

■ The appellants' second argument in support of its construction of the umbrella policy relies upon the clause extending what is essentially primary coverage, subject only to a $10,000 deductible, for occurrences "not covered by said underlying insurances." This position acknowledges that the attached schedule lists the Fireman's Fund policy as extending coverage of $500,000 to each occurrence. The appellants contend, however, that inasmuch as Hamilton received only $20,000 of coverage under that policy, he essentially was "not covered" by the policy as it was described

in the attached schedule to the Mission policy. Once again, we note that the literal language of the umbrella policy affords no such construction. "Not covered by said underlying insurances," as that phrase is understood in normal usage, speaks only to the *fact* of coverage under the underlying policy, not to the *extent* of coverage under that policy. Therefore, although the attached schedule described the Fireman's policy in terms of $500,000, it nevertheless cannot be said that Hamilton was "not covered" because he received only $20,000 of coverage under that policy. Furthermore, the construction urged by the appellants would result in an overlap between the primary policy coverage and the umbrella policy coverage. If the occurrence is "covered" under the primary policy, the threshold point under the umbrella policy is fixed at $500,000. If the occurrence is "not covered," the threshold point drops to become primary coverage extending above the $10,000 deductible. Yet, the primary coverage, under the Fireman's Fund policy as to Hamilton was undisputedly up to $20,000. To find the occurrence involving Hamilton "not covered," therefore, would result in an overlap of primary coverage between the two policies from the point of the $10,000 deductible under the Mission policy up to the $20,000 liability limit of the Fireman's policy.[6]

---

6. We note that the Mission policy contains an "Other Insurance" clause, which states: "If other valid and collectible insurance with any other insurer is available to the insured covering a loss also covered by this policy ... the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance." [Rec. 214]. The Fireman's Fund policy also contains such a clause, which asserts that "when two or more policies cover on the same basis, either excess or primary, we will pay only our share." [Rec. 229]. The general rule is that in cases of overlapping coverage, an "excess clause" will prevail over a "pro-rata clause." *See* 8A Appleman, Insurance Law and Practice § 4909.25 (rev. ed. 1981), *citing Chicago Ins. Co. v. American Southern Ins. Co.*, 115 Ga.App. 799, 156 S.E.2d 143 (1967); *Zurich Ins. Co. v. New Amsterdam Cas. Co.*, 117 Ga.App. 426, 160 S.E.2d 603 (1968). But Appleman also notes that this generalization may not be true in situations where two policies were issued to the same insured. 8A Appleman, *supra*, § 4909, at 403–04. Consequently, resolution of the issue of

which clause prevails, and hence the allocation of liability in light of the overlapping coverages, is largely a factual determination depending upon matters such as the wording of the policies involved, the status as to ownership or nonownership of the person driving the vehicle, and the inclusion of either "pro-rata" or "excess" clauses in either or both of the policies. *See* 76 A.L.R.2d 502 (1961 & 1985). *Compare Preferred Risk Mutual Ins. Co. v. Commercial Union Ins. Co. of N.Y.*, 121 Ga.App. 367, 173 S.E.2d 730 (1970) (stating in dicta that in regards to automobile accident, excess clause in vehicle owner's homeowner policy would prevail over pro-rata clause contained in the vehicle owner's automobile policy); *State Farm Fire & Cas. Co. v. Holton*, 131 Ga.App. 247, 205 S.E.2d 872 (1974) (where the defendant driver was covered under both the vehicle owner's policy and his own policy, and the policies each contained identical excess clauses that did not depend on the owner or nonowner status of the driver, those clauses would be disregarded and liability

More significantly, we note that the type of occurrence involved here is not of the type that an umbrella policy is ordinarily intended to provide primary coverage. As the predecessor to this court has observed:

The purpose of the [lower] retained limit is to extend different kinds of coverage than the existing liability insurance provided by the underlying policy and the extra limits of the umbrella policy. The textbook explanation of umbrella insurance that Ranger's counsel has cited to the court rationally explains this lower retained limits as applying to losses of different character than the more typical losses covered by liability insurance. Thus, the umbrella policy has two functions: 1) to provide for a higher limit of liability for those losses typically covered by liability insurance—general liability and comprehensive auto liability for bodily injury and property damage; 2) to provide for some coverage of those less common losses not typically covered by liability insurance—e.g., malpractice liability, advertiser's liability, blanket contractual liability, world-wide operations liability, etc.

*Ridgeway v. Gulf Life Insurance Co.*, 578 F.2d 1026, 1030 (5th Cir.1978) (quotation from appended district court opinion). *See also* 8A J. Appleman, *Insurance Law and Practice* § 4909.85 (Rev. ed. 1981). We find nothing in this record, either from the unambiguous language of the umbrella policy or from other testimony, to indicate a deviation from this industry norm.[7]

■ Finally, we note that the appellants argue that even if the district court was correct in determining that there was a fixed threshold point of liability under the Mission policy of $500,000, the lower court nevertheless erred in applying that finding under the facts of this case. We agree. This case involves two sets of claims stemming from the occurrence in question: $220,000 in settlements under the Fireman's Fund primary policy and $522,809.50 in unsatisfied judgments against Hamilton.[8] These settlements and judgments in aggregate constitute $742,809.50 in claims arising from this occurrence. The primary principle adopted in the body of this opinion is that Mission's liability under the excess policy arises at the *fixed* point of $500,000 *per occurrence*. If that principle is followed, given total claims of $742,809.50, Mission should have a remaining liability of $242,809.50 in excess of the $500,000 threshold limit. The district court, however, determined that Mission's liability under the excess policy commenced at the fixed point of $500,000 as to the $542,-809.50 in total judgments against Hamilton. Mission has presented no reason, and we find none, for not including the $220,000 in settlements in computing the total claims arising from this occurrence against which the $500,000 threshold will be applied. Otherwise, as the appellants observe, the practical effect of the district court's holding is to commence Mission's liability after the first $720,000 in claims arising from this occurrence—the $220,000 settlement *plus* the $500,000 threshold.

pro-rated); *Chicago Ins. Co.*, 115 Ga.App. at 802, 156 S.E.2d 143 (where driver of automobile was covered under the policy of the owner of the vehicle, as well as his own policy, and both policies contained identical excess clauses extending only to nonowner status of the driver, the excess clause in the driver's policy would prevail and no liability would inure under that policy until the limits of the owner's policy were exhausted). In no way do we speculate as to how Georgia courts would treat the respective clauses found here under the exact circumstances of this case. Rather, it is enough to note that the construction urged by the appellants would result in what is essentially overlapping coverage that would give rise to this difficult issue.

7. In fact, Mission asserts that its representatives testified that such coverage under this umbrella policy relates to specialty claims such as libel, slander, advertising liability and age discrimination, when those matters are not covered by the underlying policy.

8. As noted earlier, the judgments as to Hamilton apparently totalled $542,809.50. Of the total $220,000 Fireman's Fund settlement, however, $20,000 was tendered on behalf of Hamilton, leaving $522,809.50 in unsatisfied judgments as to him.

We note that the appellants also have asserted that if this court finds a "gap" in coverage, that gap should extend from the upper limit of the primary policy minus the amounts actually paid under that policy (in this case, $500,000 minus $220,000, or $280,000). This argument relies on the Limit of Liability clause of the umbrella policy, which states that "in the event of reductions of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder, this policy ... [shall] pay the excess of the reduced underlying limit." [9] The appellee urges that when the limitation provision is read in conjunction with the rest of the umbrella policy, *see Collins,* 136 Ga.App. at 675, 222 S.E.2d 828, it is clear that the "reduction of limits by reason of losses paid" terminology is referring to instances where the underlying policy provides for limited liability based upon the aggregate of claims during the policy *period,* rather than per *occurrence.* Under the facts of this case, whether the $220,000 in settlements is included in the aggregate of claims as indicated above, or is subtracted from the excess policy limit, the result is the same—liability on the part of Mission to the extent of $242,-809.50. We therefore find it unnecessary to determine the effect of the Limits of Liability clause in this case.

## CONCLUSION

In construing the umbrella policy in question here, we perceive the seminal issue to be one of ambiguity versus non-ambiguity. Viewed in light of the only reasonable construction that can be given the terms of that policy, we find no ambiguity and conclude that the limit of liability set forth therein is fixed at the threshold point of $500,000. In that respect, the district court's decision is affirmed. Under the circumstances of this case, however, the district court erred in computing the total claims arising from this occurrence against which that figure must be juxtaposed. On remand, the district court is instructed to include the Fireman's Fund settlements in the aggregate of claims arising from this occurrence, and to conform its judgment in accordance therewith.[10]

Appellants' Petition For Rehearing is granted, and our original opinion is modified as set forth above.

AFFIRMED in part, and REMANDED with instructions.

---

9. *See supra* note 1.

10. We note that a disparity in the figures has arisen in the appellants' Petition For Rehearing. Appellants in their Petition contend that they are entitled to a judgment in the amount of $220,000. They assert that the liability incurred here is $200,000 by way of settlement and over $520,000 by way of unsatisfied judgments, making a total of over $720,000 in claims, minus the $500,000 threshold. Appellants' Petition For Rehearing, at 8 n. 2. Up to this point, the parties have indicated $220,000 in settlements under the Fireman's Fund policy, $20,000 of which was paid on behalf of Hamilton, against whom total judgments of $542,809.50 were rendered. We consequently have computed the total claims as comprising $220,000 in settlements and $522,809.50 in unsatisfied judgments, making $742,809.50 in total claims. It appears, therefore, that to their detriment, the appellants' computations fail to account for the $20,000 settlement paid as to Hamilton in computing the total amount of claims arising from this occurrence. Nevertheless, we leave it to the district court on remand to harmonize the figures applicable here.