LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,

v.

UNITED STATES FIDELITY AND GUARANTY INSURANCE COMPANY, Defendant.

Civ. A. No. J88–0521(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Aug. 13, 1990.

**954**

Michael Ellingburg, John Clark, Jackson, Miss., for plaintiff.

Charles. G. Copeland, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This is an action whereby Liberty Mutual Insurance Company (Liberty Mutual), plaintiff, seeks reimbursement or, alternatively, contribution from United States Fidelity and Guaranty Insurance Company (USF & G), defendant, for amounts expended in defending two state court actions. The parties have stipulated to all relevant facts, and the cause is now before the court for decision. The court has considered the memoranda submitted by the parties in reaching its conclusions of law.

The stipulated facts are as follows. In 1982 the Mississippi State Highway Department solicited bids for two highway construction projects on Interstate–55 North in Hinds and Madison Counties. Cook Construction Company, Inc. (Cook) and John H. Moon and Sons, Inc. (Moon) submitted a joint bid and were awarded the contract. Both were in the business of building and constructing roadways, Cook being primarily an asphalt paver and Moon primarily a bridge builder. Subsequently they entered into a joint venture agreement with one another, and the joint venture executed the highway construction contract.

The joint venture began work on the projects in 1984. On January 31, 1985 an automobile accident occurred on I–55 North within the construction boundaries on a temporary detour constructed and maintained by Cook as a portion of its responsibility under the joint venture agreement. Moon had no actual participation in the construction of the area where the accident occurred. Larry Slaughter died as a result of the accident, and Jack Wactor was severely and permanently injured. Wactor and a representative of Slaughter filed suits in state court. Both the Wactor suit and the Slaughter suit named Cook and Moon as defendants and alleged that they were jointly and severally liable as joint venturers; neither suit named the joint venture as a defendant.

At all relevant times, Cook and Moon were each insured by comprehensive general liability insurance policies. Cook's policy was issued by Liberty Mutual; Moon's was issued by USF & G. In addition, the joint venture was insured under a third such policy, issued by USF & G; this policy had been procured to satisfy a requirement of the state highway department that the joint venture obtain contractors public liability insurance in the name of the joint venture for its operations in performing the contract work. The named insured on this policy was the joint venture; Cook and Moon individually were also insured under a provision including any member of the joint venture as an insured.

Cook and Liberty Mutual requested USF & G to defend Cook under the USF & G joint venture policy, asserting that it provided primary coverage. USF & G declined to assume the defense of Cook in either suit. Thus, Liberty Mutual defended Cook.[1] The Wactor suit resulted in a verdict and judgment in favor of the defendants. The Slaughter suit was settled for

---

1. USF & G defended Moon in both suits under  the Moon policy.

$50,000, with Liberty Mutual and USF & G (pursuant to the Moon policy) each advancing half of the settlement payment. Liberty Mutual now seeks reimbursement for the costs of defending Cook in both suits and the settlement payment made on Cook's behalf in the Slaughter suit, or alternatively, contribution for one-half of these costs. The parties have stipulated to the necessity and reasonableness of these amounts.

The express terms of the joint venture policy indicate that USF & G had a duty to defend Cook in the state court actions:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury or ... property damage to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

USF & G does not dispute that it had contracted to provide a defense to Cook under certain circumstances; however, USF & G maintains that the coverage afforded by its policy was excess, the Liberty Mutual policy providing the primary coverage for defense of Cook. Thus, USF & G contends, it is not responsible for any portion of the payment of Cook's defense and settlement costs, since the coverage provided by Liberty Mutual under the Cook policy was sufficient to cover them. The position set forth by Liberty Mutual is the inverse of USF & G's argument. Liberty Mutual argues that USF & G's coverage was primary and Liberty Mutual's was excess, and that therefore it is entitled to full reimbursement from USF & G. In the alternative, Liberty Mutual argues that both policies provide primary coverage, and thus, Liberty Mutual is entitled to contribution from USF & G.

Both the Cook policy and the joint venture policy contain identical "other insurance" clauses, which state as follows:

*Other Insurance.* The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) *Contribution by Equal Shares.* If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) *Contribution by Limits.* If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

In contending that, notwithstanding the explicit language of the policy, its policy

provides only excess coverage, Liberty Mutual relies on and urges this court to adopt the so-called Pennsylvania rule, by which specific insurance is deemed to be primary and general insurance is deemed to be excess. *See* 16 *Couch on Insurance 2d* § 62:59, at 504 (2d ed. 1983). Liberty Mutual argues that because the Wactor and Slaughter suits pertained to the joint venture's work and sought to impose joint and several liability on Cook and Moon because of their status as joint venturers, the joint venture policy is more specific for Cook's defense in these suits. It reasons that the policy designates the joint venture as the named insured and was purchased specifically for the joint venture construction projects pursuant to highway department regulations, and specifically mentions the projects. In contrast, Liberty Mutual observes, the Cook policy includes the joint venture as an insured only by endorsement.[2]

USF & G likewise relies on the Pennsylvania rule, taking the position that the Cook policy is more specific regarding the defense of Cook in the Wactor and Slaughter litigation. It points out that Cook and Moon individually, not the joint venture, were named as defendants in the suits; therefore, USF & G maintains, the policy designating Cook as the named insured is more specific regarding Cook's defense in those suits than is the joint venture policy, under which Cook is only an omnibus insured. Moreover, according to USF & G, under the Pennsylvania rule, courts may look to which party is primarily liable for the harm caused; because Moon had no participation in the area where the accident occurred, the alleged negligence was that of Cook, not of the joint venture, and thus the Cook policy, under which Cook is the named insured, provides the primary coverage. USF & G also seeks to draw an analogy to Mississippi law regarding the primacy of a policy covering the owner of the vehicle involved in an accident, creatively arguing that the "vehicle" here is the separate and independent work of Cook, for which it bore its own responsibility under the joint venture agreement.

■■■ None of these arguments is persuasive. In the court's view, there is no meaningful basis for concluding that either policy is more "specific" or more "general" than the other. Each policy provides comprehensive general liability coverage to Cook, and each explicitly states that the coverage provided is *primary*. This is in contrast to the situation contemplated by the Pennsylvania rule, the essence of which is that coverage provided by blanket policies is held to be excess where a more specific policy covers the property or risk. *See* 16 *Couch* § 62:59, at 504. Moreover, as USF & G acknowledges, the Pennsylvania rule is a minority rule and has never been adopted by Mississippi courts. Under Mississippi law, where two policies purport to provide primary coverage, they are to be enforced according to their terms:

> The general common law rule is that "the liability of insurers under overlapping coverage policies is to be governed by the intent of the insurers as manifested by the terms of the policies which they have issued." 16 *Couch on Insurance 2d* § 62:44, at 480 (rev'd ed. 1983). "[W]here such contractual provisions are not inconsistent with public policy, they will be enforced." 8A Appleman, *Insurance Law and Practice* § 4907.65, at 367.

*Blue Cross & Blue Shield of Miss. v. Larson*, 485 So.2d 1071, 1074 (Miss.1986) (quoting *Blue Cross & Blue Shield of Kan. v. Riverside Hosp.*, 237 Kan. 829, 703 P.2d 1384, 1390–91 (1985)); *see also Travelers Indem. Co. v. Chappell*, 246 So.2d 498, 510 (Miss.1971) (citing 17 Am.Jur.2d *Contracts* § 242 (1964)) (court has no right to construe and enforce contract on any terms other than those employed in the contract itself). The court concludes that both policies provide primary coverage, and thus each policy constitutes "other insurance"

---

**2.** Liberty Mutual's statement that Cook is "the" named insured under the Cook policy and its attempt to downplay the joint venture's coverage thereunder fails to take into account the fact that the endorsement which includes the joint venture under the Cook policy explicitly states that the joint venture is a "named insured."

within the meaning of the respective "equal shares" provisions of the policies.

Mississippi law is clear that if an insurer breaches a duty to defend and the defense is assumed by a second insurer, the second insurer may recover that portion of the reasonable and necessary attorney's fees and settlement payments which the first insurer was obligated to pay. *See Canal Ins. Co. v. First Gen. Ins. Co.,* 889 F.2d 604 (5th Cir.1989) (reimbursement for defense costs); *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.,* 601 F.Supp. 286 (S.D.Miss.1984) (reimbursement for defense and settlement costs and payment of judgment); *State Farm Mut. Auto. Co. Ins. v. Commercial Union Ins.,* 394 So.2d 890 (Miss.1981) (reimbursement for defense costs and settlement payment). USF & G does not dispute that if both policies provide primary coverage, it is liable, pursuant to the "equal shares" provision of the policy, for one-half of the defense costs and settlement payment expended by Liberty Mutual on Cook's behalf. Nevertheless, it seeks to avoid a judgment in favor of Liberty Mutual on the theory that such recovery would result in a "circuity of actions," which is disfavored. It reasons that under the joint venture agreement, Cook agreed to indemnify Moon for claims, suits or liabilities arising out of the performance of Cook's portion of the construction project. The Wactor and Slaughter suits arose out of an accident involving Cook's portion of the project. Thus, USF & G, as subrogee of Moon's rights pursuant to its defense of Moon under the Moon policy, is entitled to indemnification from Cook for the cost of Moon's defense. Furthermore, if both Liberty Mutual and USF & G, pursuant to the joint venture policy, are primary insurers for Cook, then Liberty Mutual would be responsible for paying one-half of USF & G's claim for indemnity. Defendant contends that recovery by Liberty Mutual would simply generate an additional lawsuit by USF & G against Liberty Mutual for approximately the same amount of money which Liberty Mutual would have recovered from USF & G. In short, its position is that it would be more efficient to simply deny Liberty Mutual recovery in the present action.

A problem with defendant's "circuity of actions" scenario is that, contrary to defendant's assertion, no additional lawsuit will be *generated* by Liberty Mutual's recovery. Any right which USF & G has to indemnity has existed since the time it paid, under the Moon policy, the cost of Moon's defense and the settlement payment; nothing about recovery by Liberty Mutual for the cost of Cook's defense will, or could, in any way affect or change USF & G's rights or create additional rights to indemnification from Cook.[3]

The more fundamental difficulty with USF & G's position is that USF & G has no claim or right against Liberty Mutual which can be the basis for a setoff. Mississippi does not allow direct actions against insurers. *See, e.g., Westmoreland v. Raper,* 511 So.2d 884 (Miss.1987). The basis for this rule disallowing direct actions is that a third party has no right which can be asserted against an insurer. Any right which USF & G has to indemnification must be asserted against Cook, not Liberty Mutual.

Accordingly, judgment will be granted in favor of Liberty Mutual for one-half of the cost of Cook's defense and settlement on its behalf. A separate judgment shall be entered pursuant to Fed.R.Civ.P. 58.

SO ORDERED.

---

**3.** The case cited by USF & G in support of its circuity of actions defense addresses a situation where recovery by the plaintiff would have created a previously non-existent right by defendant to recover the same amount either from the plaintiff or its insured, thereby generating an additional lawsuit. *See Maryland Casualty Co. v. Employers Mut. Liab. Ins. Co.,* 208 F.2d 731 (2d Cir.1953).