**FARMERS INSURANCE EXCHANGE and John K. Colvin**

v.

**HARTFORD CASUALTY INSURANCE COMPANY, National Surety Corporation.**

Civ. A. No. 3:94–CV–571(L)(N).

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 28, 1995.

Leland S. Smith, III, McCoy, Wilkins, Stephens & Tipton, Jackson, MS; Nicholas E. Bragorgos, Glassman, Jeter, Edwards & Wade, Memphis, TN, for Plaintiffs.

Suzanne N. Saunders, Saunders & Wiggins, Jackson, MS; Curtis E. Coker, Daniel, Coker, Horton & Bell, Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motions of defendants National Surety Company (National) and Hartford Casualty Insurance Company (Hartford) for summary judgment and cross-motions by plaintiff Farmers Insurance Exchange (Farmers) for summary judgment, all of which motions have been fully briefed by the parties. The court, having now considered the motions and responses thereto, concludes that National's motion for summary judgment should be granted. The court further concludes that Farmers is entitled to summary judgment against Hartford.

The facts giving rise to this lawsuit are undisputed. In November 1992, John Colvin, an insurance salesman for Lifestyles Marketing Group, Inc. (Lifestyles), was involved in an automobile accident in Rankin County, Mississippi, in which one individual died and five others were seriously injured. As a result of that accident, four separate lawsuits were filed against Colvin and Lifestyles by the accident victims or their representatives. At the time of the accident, Colvin had in effect two insurance policies issued by Farmers. One, a personal automobile liability policy, provided limits of $100,000 per person and $300,000 per occurrence, while the other, a personal umbrella policy, had an aggregate liability limit of $1,000,000. Lifestlyes was insured under policies issued by Hartford and by National which provided liability limits of $5,000,000 and $20,000,000, respectively, and which included Lifestlyes' employees as additional insureds for accidents occurring in the course and scope of their employment.

The three insurers, National, Farmers and Hartford, disagreed as to how their policies operated under the circumstances, since each policy, with the exception of Farmers' $300,-000 primary policy, contained a version of an "other insurance" clause. Nevertheless, to effectuate approximately $2,955,000 in settlements of the underlying lawsuits,[1] Farmers contributed the $300,000 limits of its primary policy (since Farmers' duty to pay under that policy was not at issue), and Hartford paid the $2,655,000 balance of the settlements with the understanding that the three insurers could later litigate their liabilities under their respective insurance policies. Thus, following the settlements, Farmers and its insured, Colvin, filed the present declaratory judgment action against National and Hartford to obtain a judicial determination of the insurers' respective rights and responsibilities under their insurance policies.

Farmers argues that its $1,000,000 excess policy, in contrast to Hartford's and Nation-

---

1. Due to a confidentiality agreement between the parties to the underlying lawsuits, the precise amount of the settlements is not known. However, for this court's purposes, it is not necessary that the amount be known specifically.

al's policies, provides *true* excess coverage so that its excess policy therefore applies only after the limits of liability provided by both Hartford's $5,000,000 and National's $20,000,000 policies are exhausted. It contends that since the underlying lawsuits were settled for an amount well within those other insurers' coverages (and in fact, within Hartford's coverage alone), the loss will be paid without resorting to Farmers' umbrella policy. Farmers argues alternatively that should the court conclude that Farmers' policy is not excess over and above the Hartford/National coverages, then the insurers' respective liability for the loss should be prorated by comparing the Farmers $1,000,000 line to the total amount of coverage, $26,000,000, available in both lines of coverage. In other words, Farmers' liability would be, at most, 1/26th of the $2,655,000 settlement balance.

Both Hartford and National dispute Farmers' position on the coverage of these policies. Hartford submits that it is entitled to summary judgment requiring Farmers to reimburse Hartford for the underlying settlements up to Farmers' policy limit of $1,000,000 because Hartford's policy is excess over Farmers' policy. Alternatively, it urges that the court, if it decides to prorate, should require Farmers to contribute dollar-for-dollar until its policy limits are exhausted.

For its part, National argues (and Hartford agrees) that it is not liable for any portion of the loss since its policy, the $20,000,000 umbrella policy, affords insurance coverage only after the exhaustion of Hartford's $5,000,000 policy, and the settlement did not exhaust Hartford's limits. Accordingly, National denies that it is liable for any part of the settlement.

As between Farmers and Hartford, each claims that by virtue of an "other insurance" provision, its policy is excess insurance over and above the other's policy. Hartford's "other insurance" clause states:

### G. Other Insurance

This policy shall apply in excess of all "underlying insurance" whether or not valid and collectible. It shall also apply in excess of other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which also applies to any loss for which insurance is provided by this policy.

These excess provisions apply, whether such other insurance is stated to be:

1. Primary;
2. Contributing;
3. Excess; or
4. Contingent;

Provided that if such other insurance provides umbrella coverage in excess of underlying insurance or a self-insured retention, this policy shall contribute therewith with respect to such part of "damages."

However, we shall not be liable for a greater proportion of such loss than the amount which would have been payable under this policy bears to the sum of:

1. Said amount; and
2. The amounts which would have been payable under each other umbrella policy applicable to such loss, had each such policy been the only policy so applicable.

In contrast, Farmers' "other insurance" clause simply states:

5. *Other Insurance.* This insurance is excess over other insurance (except insurance purchased to apply in excess of the sum of the **underlying insurance** limit and our liability limit), covering the same loss.

When more than one insurance policy covers a particular incident, courts look first to the language of the policies to settle any disputes as to the application of the respective coverages. This court has recognized the general common law rule

that "the liability of insurers under overlapping coverage policies is to be governed by the intent of the insurers as manifested by the terms of the policies which they have issued." 16 *Couch on Insurance 2d* § 62:44, at 480 (rev'd ed.1983). "[W]here such contractual provisions are not inconsistent with public policy, they will be enforced." 8A Appleman, *Insurance Law and Practice* § 4907.65, at 367.

*Liberty Mut. Ins. Co. v. United States Fidelity & Guar. Co.*, 756 F.Supp. 953 (S.D.Miss.

1990) (quoting *Blue Cross & Blue Shield of Miss. v. Larson*, 485 So.2d 1071, 1074 (Miss. 1986)) (additional citations omitted).[2] However, in cases of concurrent coverage, problems have often arisen in determining the proper allocation of a loss among respective insurers. In cases where the policies say nothing on the subject of how they are to be applied where there is other insurance for the loss, the coverages are typically applied on a contributing basis, i.e., each insurer pays a proportionate share of the loss, which is usually computed according to the total limits of insurance applicable to the loss. Often, however, policies contain "other insurance" clauses which, generally speaking, are of three types: escape, excess and prorata. Escape clauses provide that the policy affords no coverage at all when there is other valid and collectible insurance. Excess clauses provide that the insurer's liability shall be only the amount by which the loss exceeds the coverage of all other valid and collectible insurance, up to the limits of the excess policy. And prorata clauses provide that the insurer will pay its prorata share of the loss, usually in the proportion to which the limits of its policy bear to the aggregate limits of all valid and collectible insurance. The courts have refused to enforce conflicting "other insurance" clauses literally, because giving full effect to such clauses would allow both insurers to avoid liability altogether. *Travelers Indem. Co. v. Chappell*, 246 So.2d 498, 503 (Miss.1971). Rather, at least so long as the clauses are identical (or of the same type), the courts have held them to be conflicting and repugnant so as to cancel each other out, in which case the liability under the policies is prorated as it would be if neither policy addressed the "other insurance" situation. *Id.*

 In the case at bar, Farmers contends that whereas its policy contains what it terms a "true" excess clause, Hartford's "other insurance" clause, as least as it applies in this case, is a prorata clause. Farmers then argues that this court should apply the general rule that an "excess" clause prevails over a "prorata" clause. Hartford acknowledges that its other insurance clause includes contribution, or prorata language, but it denies that the prorata portion of the clause applies in this case. Hartford's position must be rejected.

As Hartford notes, the contribution language of its other insurance clause applies only when the "other insurance provides umbrella coverage in excess of underlying insurance or a self-insured retention." Hartford points out that its policy specifically defines the phrase "underlying insurance" as "the insurance policies listed in the Schedule of Underlying Policies," and it reasons, therefore, that since Farmers' policy was not purchased as umbrella coverage over any of the insurance policies listed in Hartford's Schedule of Underlying Policies, then the Farmers policy is not such "other insurance" as to which the contribution provision would apply. Rather, as Hartford reads its policy, the only portion of its "other insurance" clause applicable to this case is the first part, which says that Hartford's policy will be excess over other insurance, whether primary, contributing, excess or contingent. Hartford's position is fundamentally flawed in that it is founded on the erroneous assumption that the use of the phrase "underlying insurance" in the contribution clause is intended to refer to the policy definition of "underlying insurance."

Hartford's policy recites that "words and phrases that appear in quotation marks ... have special meanings," for which one must "refer to the Definitions section of this policy." Quotation marks appear around the first reference to "underlying insurance" in Hartford's other insurance clause (i.e, "This policy shall apply in excess of all 'underlying insurance' whether or not valid and collectible."), reflecting Hartford's intention that the phrase as used there be construed according to the policy definition. In the contribution portion of the clause, however, the phrase appears without quotation marks: "Provided that if such other insurance pro-

---

**2.** The court would note that while Hartford contends that either Mississippi or Texas law should be applied to this case, all of the parties acknowledge that it should make no difference in the end which state's law applies for there is no basis for concluding that there is any conflict in these states' laws as to the legal issues presented.

vides umbrella coverage in excess of underlying insurance or a self-insured retention, this policy shall contribute therewith with respect to such part of 'damages.' " Inferentially, the phrase, when used without the quotation marks, has no "special meaning," and instead carries with it a broader, more general meaning than the assigned definition which is restricted to scheduled underlying policies. A more general meaning would necessarily include underlying insurance policies other than those listed in Hartford's Schedule of Underlying Policies. Since Farmers' umbrella policy provides "umbrella coverage" which is "in excess of underlying insurance," then, the contribution provision of Hartford's policy applies, and Hartford's policy "shall contribute therewith."

■ The majority rule, by far, is that "excess insurance is considered to prevail over pro rata—that is, it is not other valid and collectible insurance within a pro rata clause." 8A J. Appleman, *Insurance Law & Practice* § 4909.25, at 409 (rev. ed. 1981); *see also* 16 Couch, *Cyclopedia of Insurance Law* § 62:72, at 530 (1983) ("As a general rule it is held that where an excess clause and a pro-rata clause appear in concurrently effective automobile liability policies, the prorata clause is disregarded and full effect is given to the excess clause, making the prorata policy the primary insurance."); *United Services Auto. Assoc. v. Russom,* 241 F.2d 296, 302 n. 11 (5th Cir.1957) ("collected cases indicate an overwhelming acceptance of th[is] general rule"); *Garmany v. Mission Ins. Co.,* 785 F.2d 941, 947 n. 6 (11th Cir.1986) ("The general rule is that in cases of overlapping coverage, an 'excess clause' will prevail over a 'pro-rata clause.' "); *Travelers*

*Indem. Co. v. Chappell,* 246 So.2d 498, 503 (Miss.1971) (noting that courts, attempting to give full effect to the intent of two policies to offer two different levels of coverage, ordinarily give effect to an excess clause which is in conflict with a prorata clause in another policy); *State Farm Mut. Auto. Ins. Co. v. Pan American Ins. Co.,* 431 S.W.2d 765, 769 (Tex.App.1968). This court recognizes that there are a few courts which, when confronted with a prorata policy on the one hand and an excess policy on the other, have held the clauses mutually repugnant and applied the excess policy on a contributing basis. Hartford has pointed out such cases for the court's review. However, this is a distinctly minority position, which the commentator Appleman has predicted "is unlikely [to] gain any great number of adherents." *Appleman,* § 4909.25, at 417 n. 4.[3] Consistent with this majority rule, this court concludes that Farmers' coverage would not be implicated until Hartford expended its policy limits. And, since Hartford's $5,000,000 limits are more than adequate to cover the loss occasioned by the settlements, Farmers is entitled to a declaration of nonliability for any portion of the loss.[4]

■ National's position in this action is that it is not liable for any part of the settlements since its policy affords insurance coverage only in excess and after the exhaustion of "underlying insurance," which the policy explicitly defines to include only the $5,000,000 Hartford policy. It reasons that its coverage is not implicated by the loss since the settlements did not result in exhaustion of the "underlying insurance," i.e., of Hartford's $5,000,000 coverage. Farmers, on the other hand, has submitted that its

---

**3.** Hartford argues that this court should use the concept of "equitable contribution," or the notion that one who pays money for the benefit of another should receive reimbursement. The court finds no authority for application of such "equitable contribution" in the context of the present controversy.

**4.** Hartford has argued that Farmers should be made to reimburse Hartford for the $156,408.81 in costs and attorneys' fees expended by Hartford in defense of the underlying actions. The basis of Hartford's demand in this regard is the same as that relating to Farmers' duty to provide coverage. That is, it argues that "if [Farmers'] um-

brella policy is held to have primary coverage and Hartford's is found to be secondary, ... then general rules of indemnity require it to reimburse Hartford for having paid something which Farmers should have paid." It submits alternatively, that "Farmers should at the very least be required to share in the costs of defense, especially should this Court decide to prorate liability." Since the court has concluded that the entire loss falls upon Hartford because Hartford's policy provides primary coverage under the circumstances, the court thus further concludes that Hartford has asserted no viable basis for recovery of the defense costs it has incurred.

policy "kicks in" only after *all* other insurance, including National's $20,000,000 coverage, is exhausted. Farmers' alternative position is that if contribution is ordered, then the court must figure the insurers' respective liabilities on the total limits of all insurance, including National's $20,000,000 policy. Though Farmers' position is clearly without merit as it pertains to National's coverage, the court need not decide this issue since Hartford's coverage alone is sufficient to cover the loss.[5]

Based on the foregoing, it is ordered that Farmers' motion for summary judgment is granted against Hartford. It is further ordered that Hartford's cross-motion for summary judgment is denied. Its motion against National, as well as National's cross-motion against Farmers, are denied as moot.

---

**5.** National's policy could not state more plainly that it applies only after Hartford has paid the limits under its policy. Farmers may not wield its "other insurance" clause to force National to cover a loss to which its policy clearly does not apply. *See Atlantic Mut. Ins. Co. v. Truck Ins. Exchange,* 797 F.2d 1288 (5th Cir.1986) (insurers occupying position analogous to that of National were not bound to pay any amount until the primary coverage was exhausted); *cf. Mission Nat. Ins. Co. v. Duke Transp. Co., Inc.,* 792 F.2d 550 (5th Cir.1986) (insurer's policy providing coverage that was excess over specified primary coverage had no obligation to "drop down" to cover losses and defend insured when primary carrier became insolvent).